KNIGHTSBRIDGE REALTY PARTNERS, LTD.-75, Plaintiff-Appellee, *v.* SIDNEY RUDOLPH, Defendant-Appellant.

First District (2nd Division)    No. 81-25

Opinion filed April 27, 1982.—Rehearing denied May 24, 1982.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellants.

Bishop & Crawford, Ltd., of Oak Brook, for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

The trial court dismissed plaintiff's complaint for want of prosecution. Plaintiff filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) to vacate the dismissal and reinstate the action. The trial court granted this relief. Defendant appeals pursuant to Supreme Court Rule 304(b)(3) (73 Ill. 2d R. 304(b)(3)).

This case presents a novel issue of procedural law: how much jurisdiction must a trial court have over the person of the respondent to a section 72 petition in order to grant relief under that section? We note that this articulation of the issue ("how much jurisdiction") assumes that jurisdiction is a quantifiable commodity. Such a conceptualization is admittedly an intellectual contrivance. Nevertheless, we believe that this conceptualization fairly reflects the fluidity of the measures of jurisdiction.

The pertinent facts are relatively simple. Knightsbridge Realty Partners, Ltd.-75, an Illinois limited partnership, is plaintiff in the underlying action and petitioner in the section 72 proceedings. Sidney J. Rudolph, a Florida resident, is defendant and respondent. In 1977, Knightsbridge filed suit against Rudolph, alleging a breach of a lease agreement. The leased property is in Florida. Rudolph filed a special and limited appearance, contending that the Illinois courts lack personal jurisdiction over him.

The lawsuit lumbered on through several procedural maneuvers that are not here relevant. The trial court did not issue a ruling on the question of personal jurisdiction. On July 30, 1980, when the suit was on the preliminary calendar call of nonjury cases, plaintiff failed to appear and the court dismissed the cause for want of prosecution. Plaintiff became aware of this dismissal on October 2, 1980, and filed a section 72 petition to vacate the dismissal. Defendant, having been notified of the petition by certified mail, appeared specially and moved to quash the petition for lack of personal jurisdiction over defendant. The trial court, which had not yet ruled on the personal jurisdiction issue in the underlying action, did not address the jurisdictional issue but simply granted plaintiff's peti-

tion and vacated the dismissal of June 30. Defendant appeals, contending that the trial court could not properly consider the merits of the section 72 petition while the jurisdictional issue remained unresolved.

Plaintiff argues that defendant waived his special appearance by arguing the merits of plaintiff's section 72 petition. In plaintiff's view, waiver occurred when defendant made the following argument (here reconstructed in abbreviated form) in the trial court: the trial court lost jurisdiction 30 days after dismissal of plaintiff's complaint (see *Stevens v. City of Chicago* (1970), 119 Ill. App. 2d 366, 371, 256 N.E.2d 56); jurisdiction can be revested in the trial court only by a proper section 72 petition (see *Stevens v. City of Chicago* (1970), 119 Ill. App. 2d 366, 371); plaintiff's section 72 petition did not adequately allege a meritorious claim or due diligence; plaintiff's petition was therefore insufficient on its face to revest jurisdiction in the trial court, so the trial court lacked personal jurisdiction over defendant. Since defendant's argument addressed the merits of plaintiff's section 72 petition, plaintiff contends that defendant waived his special appearance and his objection to the trial court's jurisdiction. See *Schiffman v. Bowman* (1980), 88 Ill. App. 3d 766, 769, 411 N.E.2d 71.

■■ The root of such a waiver is that a defendant who is contesting the authority of the court cannot recognize the court's power to decide any facet of the dispute: "He cannot, by his voluntary action, invite the court to exercise its jurisdiction and at the same time deny that jurisdiction exists." (*Supreme Hive Ladies of the Maccabees of the World v. Harrington* (1907), 227 Ill. 511, 525, 81 N.E. 533.) It therefore appears that waiver is linked to a litigant's purpose in putting a given argument before the court. Where, as here, the purpose of making an argument is to attack the court's jurisdiction, we will not find a waiver, even if the same argument could have been employed to attack the merits of the opposing party's petition.

Defendant's argument on appeal starts with the premise that a section 72 proceeding is a new action, separate from the underlying action. (See *Burnicka v. Marquette National Bank* (1982), 88 Ill. 2d 527, 530-31, 431 N.E.2d 358.) Defendant concludes that due process requires the trial court to have jurisdiction over the person of the respondent (here, defendant Rudolph) before granting relief. Defendant argues that plaintiff has not shown that defendant has the "minimum contacts" with the State of Illinois required to support personal jurisdiction.

We find it helpful at this point to inquire into the meaning of "jurisdiction." The authorities teach that jurisdiction is, at bottom, power. "Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them; * * * If the law confers the power to render a

judgment or decree, then the court has jurisdiction." (*Rhode Island v. Massachusetts* (1838), 37 U.S. 657, 718 (12 Pet. 657, 717), 9 L. Ed. 1233, 1258.) Personal jurisdiction means "authority, obtained by the service of a summons or by other proper notice, or by an appearance, to render a personal judgment." (*People ex rel. Thompson v. Harper* (1910), 244 Ill. 121, 122, 91 N.E. 90.) Subject matter jurisdiction, on the other hand, is "the right to hear and determine causes of the general class to which the particular cause belongs." (*Walton v. Albers* (1942), 380 Ill. 423, 426, 44 N.E.2d 145.) Our courts derive this power from article VI of the Illinois Constitution. (See generally 14 Ill. L. & Prac. *Courts* §12 (1968).) The outer limit of the State's power to adjudicate is the due process clause of the Federal Constitution, although the State is free to set limits within this perimeter. *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197, 429 N.E.2d 847.

No statute or rule specifies the jurisdictional prerequisites to section 72 relief. Paragraph (2) of section 72 states, "All parties to the petition shall be notified as provided by rule." (Ill. Rev. Stat. 1979, ch. 110, par. 72(2).) Supreme Court Rule 106 directs that notice of a section 72 petition shall be given by the methods provided in Supreme Court Rule 105. (Ill. Rev. Stat. 1979, ch. 110A, par. 106.) Rule 105 allows several methods of notice, including certified mail (return receipt requested). (Ill. Rev. Stat. 1979, ch. 110A, par. 105(b).) Defendant does not contend that the notice was inadequate. Mere notice, however, cannot confer personal jurisdiction.

■■ In the absence of a statutory limit on the trial court's power to grant section 72 relief, the only limit is that established by the due process clause. Due process as a criterion for personal jurisdiction was announced by the United States Supreme Court in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, and recently restated and summarized in *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559. Due process requires that, in order to submit a non-resident defendant to the personal jurisdiction of the forum State's courts, the defendant must have certain "minimum contacts" with the forum State. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158; *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 291, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564.) Notwithstanding the presence or absence of minimum contacts, the trial court has power—that is, jurisdiction—to decide whether it has jurisdiction. (See *People ex rel. Adamowski v. Dougherty* (1960), 19 Ill. 2d 393, 399, 167 N.E.2d 181.) In the instant case, plaintiff's complaint was dismissed while the trial court was still considering the jurisdictional issue. The section 72 proceeding did no more than return the case to that jurisdictional juncture. We believe that a court that has the power to decide jurisdiction and to dismiss prior to such

decision should also have the power to vacate the dismissal and resume consideration of the jurisdictional issue.

Following *International Shoe* and *World-Wide Volkswagen*, the analysis of a court's personal jurisdiction over a defendant normally begins with a consideration of the defendant's contacts with the forum State. Here, such analysis is frustrated: the jurisdictional facts were not passed on by the trial court and are not before this court on appeal. Another anomaly is that one of the functions of the minimum contacts concept is to protect the defendant from the burden of litigating in a distant or inconvenient forum. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 291-92, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564.) Yet, the defendant who chooses to challenge the sufficiency of contacts rather than default must come to the forum to litigate that issue. Defendant here has chosen to litigate jurisdiction in the Illinois courts.

One factor bearing on the due process issue is the defendant's reasonable expectation of being haled into court. (See *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567.) When plaintiff's complaint was dismissed for want of prosecution, defendant could reasonably have anticipated that plaintiff would contest that result and seek to vacate the order. Whether it is reasonable to require the defendant to defend a particular suit in the courts of the forum State is another facet of the due process analysis. (See *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564.) The forum State's interest in adjudicating the dispute is a factor in evaluating the reasonableness of requiring the defendant to respond. (See *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564.) In the case at bar, the trial court had the power to dismiss the underlying case when it appeared that plaintiff was not pursuing it. The court also had an interest in deciding whether that dismissal was final, that is to say, the court had an interest in disposing of the merits of the section 72 petition.

■ We acknowledge that defendant could not respond to the merits of plaintiff's section 72 petition without waiving his special appearance. This fact, however, should be evaluated in light of the essential simplicity of the decision required in the instant appeal. The question is jurisdiction, and, in the absence of statute, the answer is found in due process. The lowest common denominator of due process is fundamental fairness, so the question becomes: is it fundamentally unfair to require this defendant to return to the trial court without an opportunity to argue the merits of plaintiff's section 72 petition? Given the fact that defendant did not "win" the earlier dismissal and could not have relied on its finality, we find that there is no unfairness in requiring the parties to resume their *status quo*

*ante*. Returning to the quantitative analogy set forth above, we conclude that the trial court had "enough" jurisdiction over defendant to decide the merits of the section 72 petition.

It is also important to note the matters that we do not decide. Although the trial court reserved the jurisdictional question for consideration in the reinstated underlying case, we see no reason to prefer this sequence over its alternative. The trial court might have evaluated its personal jurisdiction over defendant before deciding the merits of the section 72 petition, in which case a finding of personal jurisdiction would have bound defendant in the underlying action. Also, nothing herein is meant to suggest that a trial court may ignore personal jurisdiction over the respondent to a section 72 petition. It is not likely, however, that the question will arise often. The great majority of section 72 proceedings fall into one of two categories, neither of which presents a jurisdictional problem. Where both parties appeared generally in the underlying action, personal jurisdiction is revested by a proper section 72 petition.[1] (See *Stevens v. City of Chicago* (1970), 119 Ill. App. 2d 366, 371, 256 N.E.2d 56.) Where the defendant in the underlying action fails to appear and defaults, he submits to the court's jurisdiction by filing a section 72 petition to vacate the default judgment. The jurisdictional question posed by the present case is likely to recur only where the defendant in the underlying case appeared specially and the plaintiff in the underlying action is the petitioner in the section 72 action.

Considering the due process criteria set forth in *International Shoe* and *World-Wide Volkswagen Corp.*, we hold that the trial court's reinstatement of Knightsbridge's action is not fundamentally unfair to defendant Rudolph. Since the jurisdictional objection is the only point raised by Rudolph on appeal, the decision of the trial court is affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.

---

[1] This form of revesting jurisdiction is unrelated to a concept that bears the same name: revesting by knowing participation in proceedings after the trial court has lost jurisdiction. The latter form of revesting was last applied by our supreme court in *Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 50, 97 N.E.2d 817. The current vitality of the doctrine is open to question.